UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
TIFFANY ASBERRY,                                          :
                                                         :
                                    Plaintiff,           :
       -against-                                         :          Index No. 09 Civ. 1013 (CM)(DFE)
                                                         :
CORINTHIAN MEDIA, INC.,                                  :
CORINTHIAN COMMUNICATIONS, INC.,                         :
LARRY SCHNEIDERMAN,                                      :
IMAN LABABEDI, and                                       :
CHARLOTTE PELCMAN,                                       :
                                                         :
                                    Defendants.          :
-------------------------------------------------------------x


### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56


THE WATANABE LAW FIRM, LLC
Attorneys for Defendants
444 Madison Avenue, 17th Floor
New York, New York 10022
Phone: (212) 486-7005
Fax:    (212) 486-6010

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT………………………………………….. 1

STATEMENT OF FACTS………………………………………………… 1

LEGAL STANDARDS ON SUMMARY JUDGMENT …………………. 2

ARGUMENT

POINT I

PLAINTIFF FAILS TO ESTABLISH A *PRIMA FACIE* CASE THAT
SHE WAS DISCRIMINATED AGAINST BASED ON HER
PREGNANCY, MEDICAL LEAVE OR CARETAKER ROLE……… 3

POINT II

PLAINTIFF'S RETALIATION CLAIM FAILS BECAUSE THERE IS
NO PROTECTED ACTIVITY UPON WHICH TO BASE A
RETALIATION CLAIM, NOR DOES SHE SHOW THAT THE
PROFFERED LEGITIMATE, NON-DISCRIMINATORY REASONS
ARE FALSE…………………………………………………………. 14

POINT III

PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM
SHOULD BE DISMISSED BECAUSE IT FAILS TO MEET
LEGAL STANDARDS TO AVOID SUMMARY JUDGMENT………… 17

POINT IV

INDIVIDUAL LIABILITY CLAIMS SHOULD BE DISMISSED
BECAUSE NONE OF INDIVIDUAL DEFENDANTS WERE
EMPLOYERS AND DID NOT PARTICIPATE OR ENGAGE IN
THE ALLEGED DISCRIMINATORY ACTS…………………………… 20

POINT V

      PLAINTIFF IS BARRED FROM RECOVERING FRONT PAY
      DAMAGES BECAUSE OF THE AFTER ACQUIRED EVIDENCE
      RULE…………………………………………………………………      22

POINT VI

      NO PUNITIVE DAMAGES MAY BE AWARDED BECAUSE
      DEFENDANTS IN GOOD FAITH RELIED UPON THE ADVICE OF
      COUNSEL…………………………………………………………………      23


      CONCLUSION……………………………………………………………….      25

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Abdu-Brisson v. Delta Airlines, Inc.*, 238 F.3d 456, 466 (2d Cir. 2001)    3

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)    3

*Adorno v. Port Authority of New York and New Jersey*, 258 F.R.D. 217, 233
(S.D.N.Y. 2009)    10

*Allen v. Advanced Digital Information Corp.*, 500 F. Supp.2d 93, 105 (N.D.N.Y. 2007)    19

*Auguste v. New York Presbyterian Med. Ctr.*, 593 F.Supp.2d 659, 666 (S.D.N.Y. 2009)    1

*Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001)    3

*Brown v. The Pension Boards*, 488 F.Supp.2d 395, 406 (S.D.N.Y. 2007)    9,12,17

*Bryant v. Verizon Communications, Inc.*, 550 F.Supp.2d 513, 536 (S.D.N.Y. 2008)    6

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)    3

*Charneco v. Department of Educ.*, No. 04 Civ. 1848 (AKH), 2006 WL 148934, at *6
(S.D.N.Y Jan. 18, 2006)    11

*Chow v. Stride Rite Corp.*, No. 05 Civ. 02417 (PGG), 2009 WL 196030, at *1
(S.D.N.Y. Jan. 27, 2009)    4

*Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509
(2001)    15, 16

*Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2003)    16

*Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)    14

*Cruz v. Coach Stores. Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)    15

*Davis v. Avaya, Inc.*, No. 07-1477-cv, 2008 WL 4442469, at *2 (2d Cir. Oct. 2, 2008)    7, 11

*Doolittle v. Ruffo*, No. 88-CV-1175, 1996 WL 159850, at *16 (N.D.N.Y. Mar. 28, 1996)  19

*Dorcely v. Wyandanch Union Free School Dist.*, No. 06 CV 1265 (DRH)(AKT),

2009 WL 3232866, at *35 (E.D.N.Y. Sept. 30, 2009)  11

*Feingold v. State of New York*, 366 F.3d 138, 158 (2d Cir. 2004)  20

*Flores v. Buy Buy Baby, Inc.*, 118 F.Supp.2d 425, 431 (S.D.N.Y. 2000)  12, 22

*General Elec. Co. v. New York State Dep't of Labor*, 936 F.2d 1448, 1452 (2d Cir. 1991)  3

*Gratton v. JetBlue Airways*, No. 04 CIV. 7561 (DLC), 2006 WL 2037912, at *8

(S.D.N.Y. Jul. 21, 2006)  7, 12

*Greene v. Coach, Inc.*, 218 F. Supp.2d 404, 412 (S.D.N.Y. 2002)  22, 23

*Grennan v. Nassau County*, No. 04-2158 (DRH)(WDW), 2007 WL 952067, at *10

(E.D.N.Y. March 29, 2007)  15

*Hayut v. State University of New York*, 352 F.3d 733, 745 (2d Cir. 2003)  19

*Holt v. KMI-Continental*, 95 F.3d 123, 130 (2d Cir. 1996)  4, 16

*Incarnato v. Tops Friendly Markets, LLC*, No. 04-CV-6599T, 2006 WL 1330103, at *5

(W.D.N.Y. May 15, 2006)  9, 17

*Infante v. Ambac Financial Group*, No. 03 CV 8880 (KMW), 2006 WL 44172, at *5-6

(S.D.N.Y. Jan. 5, 2006)  7

*Javier v. Deringer-Ney, Inc.*, No. 3:07-cv-1863 (VLB), 2009 WL 3193876, at *6

(D.Conn. Sept. 30, 2009)  6

*Johnson v. Tower Air, Inc.*, 149 F.R.D. 461, 470 (E.D.N.Y. 1993)  19

*Jordan v. Olsten Health Svcs.*, 111 F.Supp.2d 227, 233-34 (W.D.N.Y.2000)  23

*Kanhoye v. Altana Inc.*, No. 05-CV-4308 (ENV)(WDW), 2009 WL 4363445, at *5

(E.D.N.Y. Dec. 3, 2009)  14

*Kear v. Katonah Lewisboro Central School Dist.*, No. 05 Civ.7038 (SCR)(MDF),

2007 WL 431883, at *3 (S.D.N.Y. Feb. 7, 2007)                                              18

*Kucharski v. Cort Furniture Rental*, No. 08-4037-cv, 2009 WL 2524041, at *1

(2d Cir. Aug. 19, 2009)                                                                   9, 10

*LaCoparra v. Pergament Home Centers, Inc.*, 982 F.Supp. 213, 223 (S.D.N.Y. 1997)         15

*Lee v. ITT Standard*, 268 F.Supp.2d 315, 353 (W.D.N.Y. 2002)                             9

*Markowski v. SEC*, 34 F.3d 99, 105 (2d Cir. 1994)                                        23, 25

*Mayo v. Columbia University*, No. 01 Civ. 2002 (LMM), 2003 WL 1824628, at *6-7

(S.D.N.Y. Apr. 7, 2003)                                                                   9

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668
(1973)                                                                                    3, 8

*McLee v. Chrysler Corp.*, 109 F.3d 130, 135-36 (2d Cir. 1997)                            6

*McNill v. New York City Dept. of Corrections,* 950 F.Supp. 564, 71 (S.D.N.Y. 1996)       4

*Petrosino v. Bell Atlantic*, 385 F.3d 210, 223 (2d Cir. 2004)                            19

*Price Waterhouse  v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268  (1989)    16

*Prystajko v. Lowe's Home Centers, Inc.*, No. 05-CV-6271, 2007 WL 781932, at *7

(W.D.N.Y. Mar. 13, 2007)                                                                  9,12,15,17

*Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998)                      19

*Reilly v. Revlon, Inc.*, 620 F.Supp.2d 524, 545 (S.D.N.Y. 2009)                          12, 17

*Riddle v. Liz Claiborne, Inc.*, No. 00 Civ. 1374 (SAS), 03 Civ. 8798 (SAS),

2006 WL 3057289, at *7 (S.D.N.Y. Oct. 27, 2006)                                           13

*Schanfield v. Sojitz Corp. of America*, No. 07-CV-9716, 2009 WL 3241573, at *19-20

(S.D.N.Y. Oct. 5, 2009)                                                                                               14

*Seils v. Rochester City Sch. Dist.*, 192 F.Supp.2d 100, 111 (W.D.N.Y. 2002),

*aff'd*, 99 Fed.Appx. 350 (2d Cir.2004)                                                                     13

*Shider v. Comm'n Workers of Am.,* 2004 U.S. Dist. LEXIS 5068, at *16-17

(S.D.N.Y. Mar. 26, 2004)                                                                                            23

*Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 91-92 (2d Cir. 2001)      4

*Smith v. AVSC Intern., Inc., 148 F.Supp.2d 302, 308 (S.D.N.Y. 2001)*                     21

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)      8

*Taylor v. Family Residences & Essential Enters., Inc.,* 2008 U.S. Dist. LEXIS 6915,

at *24 (E.D.N.Y. Jan. 30, 2008)                                                                                  11

*Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)                                                  13, 17

*Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995)                                         2

*Trotta v. Mobil Oil Corp.*, 788 F. Supp. 1336, 1342 (S.D.N.Y. 1992)                         20

*Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n. 1 (2d Cir. 2000)                           3

*Winkfield v. City of New York*, No. 97-CV-2183 (HB), 1999 U.S. Dist. LEXIS 19193,

at *14 (S.D.N.Y. Dec. 14, 1999)                                                                                  16

*Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993)                      2

## STATE CASES

*Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 819 N.E.2d 998, 786 N.Y.S.2d

382 (2004)                                                                                                               11

*Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 473 N.E.2d 11, 483 N.Y.S.2d 659 (1984)      20

## FEDERAL STATUTES

Title VII of the Civil Rights Act of 1964                                          1

## STATE STATUTES

N.Y. McKinney's Executive Law § 296(1)(6)                                          20

New York State Human Rights Law                                                    1

## LOCAL STATUTES

N.Y.C. Admin. Code. § 8-107(1)(a)                                                  21

N.Y.C. Admin. Code § 8-107(6)                                                      21

New York City Human Rights Law                                                     1

## FEDERAL RULES

Fed.R.Civ.P. 56                                                                    1, 2

## LOCAL RULES

Local Civil Rule 56.1                                                              1

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of Defendants Corinthian Media, Inc., Corinthian Communications, Inc. ("Defendant Corinthian" or "the Company") [1] , Larry Schneiderman, Iman Lababedi, and Charlotte Pelcman's (collectively "Defendants") Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. Plaintiff asserts three causes of action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), claiming discrimination on the basis of pregnancy and her role as family caretaker and retaliation (Ex. 36, Second Amended Complaint ¶¶54, 61, and 69)(hereinafter "the Complaint" and "Ex. 36, at ¶__.")[2] For the reasons set forth below, based on the undisputed material facts and applicable law, Defendants are entitled to summary judgment.

## STATEMENT OF FACTS

The relevant material facts are fully set forth in Defendants' accompanying Local Civil Rule 56.1 Statement of Material Facts ("Defendants' 56.1 Statement").

Plaintiff was employed by the Company for less than nine months, but only worked there less than seven months before she took disability leave because of pregnancy. In the seven months she actually worked at the Company, she did not show up for work on frequent occasion and was either late in reporting to work or left early from work more than forty times. Plaintiff learned almost none of the skills she was required to know in order to perform her job. She was counseled throughout her employment for her failure to either learn or become proficient with software programs necessary for her to perform her job, chronic absenteeism and tardiness,

---

[1] Reference to the companies is without prejudice, Defendants reserving all rights to have claims dismissed against either or both corporate entity(ies) at or after trial.
[2] Exhibits referenced herein are included in the accompanying Appendix.

excessive personal communications during work, insubordination, lying about having completed assignments, and overall significantly deficient work performance.   She was placed on probation and did not improve her performance.  (Defendants' 56.1 Statement ¶¶13-15; 18-33; 36-41; 47-54; 62; 72-76; 100; 113; 116)

Within ten days of beginning her job at the Company, Plaintiff started looking for other employment during work hours.  Over the next several months, she continued to look for and apply for other employment while at work using Company facilities to do so.  In e-mail correspondence to others, Plaintiff made clear, well before she took medical leave, that she had no intention of staying at the Company and would not do so after taking leave.  Indeed, no later than January 2007, four months before taking disability leave, Plaintiff was already contemplating bringing a discrimination claim against the Company.  (Defendants' 56.1 Statement ¶¶ 173-182)

Plaintiff requested disability leave in April 2007 and the accommodation was granted by the Company.  The end date of her disability leave period as determined by her physician was June 9, 2007.  Plaintiff was informed that she was required to return to work at the end of her disability period.  On June 11, 12, and 13, 2007, Plaintiff did not report to work nor did she call a supervisor to report her absence or request additional leave with medical certification, all in violation of Company policies. On June 14, 2007, having not reported to work for four consecutive days, Plaintiff's employment was terminated.   (Defendants' 56.1 Statement ¶¶125-72)

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where there is no disputed issue as to any material facts and where the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c);

Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir.1995).  On a motion for summary judgment, the moving party bears the burden of demonstrating the absence of any genuine issue of material fact.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  "It is now beyond cavil that summary judgent may be appropriate even in the fact-intensive context of discrimination cases."  Abdu-Brisson v. Delta Airlines, Inc., 238 F.3d 456, 466 (2d Cir. 2001).

In opposing a summary judgment motion, a plaintiff in an employment discrimination matter must "come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001).  To meet her burden on summary judgment, plaintiff must enumerate "specific facts and circumstances supported by deposition, affidavits based on personal knowledge, and admissions," and cannot rely on conclusory allegations or denials.  General Elec. Co. v. New York State Dep't of Labor, 936 F.2d 1448, 1452 (2d Cir.1991).  In the absence of sufficient evidence to support her case, the nonmoving party is thus entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

**ARGUMENT**

**POINT I**

**PLAINTIFF FAILS TO ESTABLISH A *PRIMA FACIE* CASE THAT
SHE WAS DISCRIMINATED AGAINST BASED ON HER PREGNANCY,
MEDICAL LEAVE OR CARETAKER ROLE**

Pregnancy discrimination claims brought under Title VII, the New York Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL") are all examined under the *McDonnell Douglas* burdening-shifting analysis.  Weinstock v. Columbia Univ., 224 F.3d 33, 42 n. 1 (2d Cir. 2000).[3]; *see* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct.

---

[3] Plaintiff fails to plead a claim specifically under the Pregnancy Discrimination Act ("PDA"), an amendment to Title VII. While pregnancy discrimination claims are typically pleaded as PDA,

1817, 36 L.Ed.2d 668 (1973).

To establish a *prima facie* case of discrimination on the basis of sex or pregnancy, a plaintiff must demonstrate, by a preponderance of the evidence, that: (1) she is a member of a protected class; (2) she satisfactorily performed her job duties; (3) she was discharged; (4) her position remained open after she went on disability leave and was subsequently filled by an employee who was not pregnant, or by offering evidence of circumstances relating to her termination that "otherwise give[s] rise to an inference of discrimination." *See* <u>Chow v. Stride Rite Corp.</u>, No. 05 Civ. 02417 (PGG), 2009 WL 196030, at *5 (S.D.N.Y. Jan. 27, 2009).

If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employment action at issue. Once the defendant carries the burden, the plaintiff has the ultimate burden to prove that the employer's reason was merely a pretext for discrimination. <u>Holt v. KMI-Continental, Inc.</u>, 95 F.3d 123, 129 (1996).

A.   <u>Failure to Carry Burden on Second Prong of *Prima Facie* Standard</u>

Plaintiff fails to demonstrate that she satisfactorily performed the duties required by the position by proving that she "possesse[d] the basic skills necessary for performance of [the] job." <u>Slattery v. Swiss Reinsurance America Corp.</u>, 248 F.3d 87, 91-92 (2d Cir. 2001). In her position as Assistant Media Buyer, Plaintiff was responsible for, *inter alia*, tracking buys for the Senior Buyers, inputting and cancelling the air times of commercials using the STRATA and CORE

---

ADA, or FMLA claims, here only a Title VII claim is asserted. Defendants are unable to find any case where a court has ruled directly on the issue of whether a pregnancy discrimination claim is sufficiently pleaded under Title VII without specific reference to the PDA. It would appear that since Congress specifically enacted the PDA to directly address discrimination based on pregnancy, the PDA should be required to be specifically pleaded where a pregnancy discrimination of the type alleged herein is asserted. If so, the Title VII claim alone is insufficient to sustain the claim brought here.

software programs, and generating spot analysis reports, "long whites," "pre-logs and post-logs." (Ex. 4-3, Lababedi Dep 9-11; Ex. 5-5, Asberry Dep 37-38; 82-84; 98-99; 124-128)

The documented record in this case establishes that Plaintiff never had or developed functional proficiency with either the CORE or STRATA programs. Her total lack of qualification concerning the STRATA program is proven by the fact that Plaintiff did not make an effort to learn the STRATA program until at least six months after her employment commenced, did not know how to perform a "cancel" function, or identify what password she was assigned on the STRATA program. (Ex. 5-5, Asberry Dep 124-131, 139-140) Plaintiff was also not proficient with "long-whites", could not identify or describe a "pre-log" or "post-long", and could not accurately describe was a "spot analysis" report was. (Ex. 4-3, Lababedi Dep 41-42; Ex. 5-5, Asberry Dep 119-120)

Plaintiff's failure "to possess the basic skills necessary for performance of [the] job" is explained and proven by the fact that in the sevens months before she took disability leave, she was late to work or left early in excess of 40 times. She frequently did not report to work at all. It is further substantiated by the fact that she spent a considerable amount of her time at work either on the telephone making personal telephone calls or e-mailing family, friends, and acquaintances, a fact which she does not deny, and searching for other employment. (Ex.1, Pelcman ¶¶13-15; Ex. 37-38; Ex 5-4, Asberry Dep 290-299; Ex. 42)

After repeated complaints by her supervisors concerning her lack of qualification, Plaintiff was placed on probation, but her job performance did not improve. She was counseled again in March 2007 after she lied about her proficiency using the STRATA program. (Ex. 2-24, Pelcman Dep 170-174, 79; Ex. 10-5, Jenkins Dep 52-55)

Utterly failing to demonstrate that she "possesse[d] the basic skills necessary for performance of [the] job", Plaintiff fails to carry her burden on this second prong as the evidence is unrebutted on the points of her being placed on probation for poor performance, having received unsatisfactory performance reviews and counseling almost immediately after she began work and throughout the term of her employment, her admission that she did not learn and was not proficient in use of the STRATA Program, and her inability to describe the operation of regular tasks required of her position such as "pre-logs", "post-logs" and "spot analysis" reports." *See* Javier v. Deringer-Ney, Inc., No. 3:07-cv-1863 (VLB), 2009 WL 3193876 at *6 (D.Conn. Sept.30, 2009)(second prong not met where employee's performance issues required intervention from supervisors and Human Resources shortly after employment commenced); Bryant v. Verizon Communications, Inc., 550 F.Supp.2d 513 (S.D.N.Y. 2008)(*prima facie* burden of showing satisfactory work performance not met where plaintiff was frequently absent from work, rarely able to work on her own, received ratings below target standards, and had trouble mastering her position since the beginning of employment); McLee v. Chrysler Corp., 109 F.3d 130, 135-36 (2d Cir. 1997) (no *prima facie* case of discriminatory discharge established where record showed employee was deficient in performance areas, tardy to work, placed on performance improvement plan, and did not dispute certain deficiencies identified by employer).

B.    Failure to Carry Burden on Fourth Prong of *Prima Facie* Standard

Plaintiff fails to carry her burden on the fourth prong because she does not produce any evidence that her position was subsequently filled by an employee who was not pregnant or evidence that her termination was based upon any other reason than her failure to return to work after leave was exhausted.

The singular fact that Plaintiff's employment was terminated after her pregnancy is insufficient to establish an inference of discrimination. Infante v. Ambac Financial Group, No. 03 CV 8880 (KMW), 2006 WL 44172 (S.D.N.Y. Jan. 5, 2006), at *5-6 ("Infante essentially wants the Court to infer from her protected status and an adverse employment action, with nothing else, that she suffered a Title VII violation. This is not enough-she must adduce evidence that raises a question of fact as to whether the employment action was based on impermissible discrimination."); see Gratton v. JetBlue Airways, No. 04 CIV. 7561 (DLC), 2006 WL 2037912, at *8 (S.D.N.Y. Jul. 21, 2006). .

Furthermore, the unrebutted evidence of Plaintiff's lack of qualifications for the position, poor performance, frequent absences and tardiness, being placed on probation, insubordination, lies concerning completion of work tasks, and excessive personal communications establish that the termination of Plaintiff's employment was not motivated by any discriminatory animus. Davis v. Avaya, Inc., No. 07-1477-cv, 2008 WL 4442469, at *2 (2d Cir. Oct. 2, 2008) (plaintiff was terminated for legitimate non-discriminatory reasons where "despite repeated counseling by her managers, her performance was poor and continued to deteriorate.").

Failing to carry her burden on the second and fourth prongs of the *prima facie* standard for a pregnancy discrimination claim and not having presented any fact(s) that would allow a reasonable factfinder to conclude that "her misfortunes occurred because of her membership in a protected class," Plaintiff fails to establish a claim for pregnancy discrimination under Title VII, NYSHRL, or NYCHRL.

C.     Legitimate, Non-Discriminatory Reasons to Terminate Employment

Assuming, *arguendo*, that Plaintiff has met her initial *prima facie* case, the burden of production shifts to Defendants to demonstrate that it had legitimate, non-discriminatory reasons

for terminating Plaintiff's employment.  <u>McDonnell Douglas</u>, 411 U.S. at 802.  Plaintiff then has the ultimate burden to prove that the employer's reason was merely a pretext for pregnancy discrimination.  An employer's reason for termination must be shown to be false *and* show that discrimination was the real reason.  <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### 1.   <u>Failure to Report to Work After End of Disability Period</u>

Plaintiff's employment was terminated in accordance with Company policies which required her to return to work after June 9, 2007, the end date of her disability as determined by her physician.  In violation of the Company's policies, Plaintiff did not report to work for three consecutive days on June 11-13, 2007, did not call her supervisors to report her absence, did not provide a physician's note explaining her absence, and did not submit a request accompanied by a physician's certificate for additional leave.  Failing to return to work or call in to report her absence for three (3) consecutive days, Plaintiff's employment was terminated on the fourth work day after she was required to return to work.   (Ex. 2-31, Pelcman Dep 213-215; Ex. 12, ¶¶57-60; Ex. 30)

Plaintiff was provided with and acknowledged receipt of the Company policies concerning leave and absences on October 23, 2007.  Plaintiff admits to knowing that job abandonment is a basis for termination of employment under the policies. (Ex. 12, ¶30; Ex. 5-14, Asberry Dep 81-82).

Defendants' equal application of the "Three Day Policy" to terminate employment is demonstrated by the termination of two male employees whose employment was terminated after they failed to report to work or request leave in accord with Company policies for three consecutive days.  (Ex. 1, Pelcman Dec. ¶¶29-32)

For these reasons, termination of Plaintiff's employment constituted a legitimate, non-discriminatory reason.  Kucharski v. Cort Furniture Rental, No. 08-4037-cv, 2009 WL 2524041 (2d Cir. Aug. 19, 2009)(pregnancy discrimination claim dismissed where plaintiff failed to return to work after pregnancy leave as required by company policy); Brown v. The Pension Boards, 488 F.Supp.2d 395, 406 (S.D.N.Y. 2007)([Plaintiff] terminated for violating company policy requiring an employee to call in to work if he or she was going to be absent for any reason was a legitimate, non-discriminatory reason); Prystajko v. Lowe's Home Centers, Inc., No. 05-CV-6271, 2007 WL 781932, at *7 (W.D.N.Y. Mar. 13, 2007)(termination of employment because of Plaintiff's failure to comply with company leave requirements and failure to return to work on expected return date was legitimate, non-discriminatory reason); Incarnato v. Tops Friendly Markets, LLC, No. 04-CV-6599T, 2006 WL 1330103, at *5 (W.D.N.Y. May 15, 2006) (termination of plaintiff's employment because of failure to report to work for two consecutive shifts in violation of company policy states a legitimate, non-discriminatory reason for firing the plaintiff); Mayo v. Columbia University, No. 01 Civ. 2002 (LMM), 2003 WL 1824628, at *6-7 (S.D.N.Y. Apr. 7, 2003)(termination of employment because of employee failure to abide by leave policy was legitimate, non-discriminatory reason); Lee v. ITT Standard, 268 F.Supp.2d 315, 353 (W.D.N.Y. 2002) (termination of employment where employee failed to show up for work for three days was a legitimate, non-discriminatory reason ).

The Kucharski case cited above is dispositive of the instant action.  In Kucharski, the Second Circuit affirmed dismissal of pregnancy discrimination claims because plaintiff, in violation of the company's leave policy, did not return to work at the conclusion of her leave period and failed to show any unequal application of the policy in favor of non-pregnant employees.  Kucharski, 2009 WL 2524041, at *1.

Plaintiff here, like the one in <u>Kucharski,</u> does not deny that she took medical leave under the Company's leave policy, that she was afforded leave under an existing leave policy, that the leave policy required employees to return after the end of the leave period, and that she did not return to work after the end of the leave period.  Plaintiff here also, like the one in <u>Kucharski</u>, does not produce any evidence to show that the leave policy was applied unequally in favor of non-pregnant employees or disprove the Company's evidence on that point.  <u>Kucharski</u>, 2009 WL 2524041, at *1.

The precedent in <u>Kucharski</u> presents even stronger reasons to dismiss the instant discrimination claims.  In this case, Plaintiff here did not suffer from any medical complication which prevented her from returning to work.  Certainly the precedent set by <u>Kucharski</u> to dismiss the pregnancy discrimination claims in a case where an employee failed to return to work because of continuing medical condition applies with even greater force here where Plaintiff had no reason not to return to work.

### 2. Enforcement of Company Policies is a Legitimate, <u>Non-Discriminatory Reason to Have Terminated Employment</u>

Separately, the Company's enforcement of its leave and "Three Day Rule" policies was a legitimate, non-discriminatory reason to terminate Plaintiff's employment because had it not enforced the policy against Plaintiff it would have later presented an opportunity for another individual to argue disparate treatment.  *See* <u>Adorno v. Port Authority of New York and New Jersey</u>, 258 F.R.D. 217, 233 (S.D.N.Y. 2009)(facially neutral policies can be shown to be discriminatory if disparate treatment shown).

### 3. <u>Poor Performance as a Reason For Termination of Employment</u>

Plaintiff's poor work performance also provided a legitimate, non-discriminatory reason for the termination of her employment. Under both state and federal law, where an employee

would have been discharged based on his/her poor performance, the employer has a legitimate, non-discriminatory reason for termination.  *See*  Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 307, 786 N.Y.S.2d 382, 819 N.E.2d 998 (2004) (failure to comply with leave policy and poor performance constitutes a legitimate, non-discriminatory reasons for termination).

Here, in addition to Plaintiff's failure to return to work and her non-compliance with the Company's leave policy, her poor work performance, absenteeism, tardiness, lack of proficiency with computer programs, insubordination, probation, and excessive personal communications provided separate legitimate, non-discriminatory reasons to terminate her employment.  *See* Dorcely v. Wyandanch Union Free School Dist., No. 06 CV 1265 (DRH)(AKT), 2009 WL 3232866, at *35 (E.D.N.Y. Sept. 30, 2009) ("Defendants have articulated legitimate, non-retaliatory reasons for their termination: Plaintiff's poor work performance, lack of professionalism, insubordination and inappropriate workplace behavior"); Auguste v. New York Presbyterian Med. Ctr., 593 F.Supp.2d 659, 666 (S.D.N.Y.2009) ("poor work performance has often been recognized as a legitimate, non-discriminatory reason for termination" in retaliation cases); Davis,  2008 WL 4442469, at *2; Charneco v. Department of Educ., No. 04 Civ. 1848 (AKH), 2006 WL 148934, at *6 (S.D.N.Y Jan. 18, 2006) (finding well-documented concerns about plaintiff's performance to be a legitimate reason for termination).

                  D.     Plaintiff Cannot Establish that Corinthian's Reasons for Terminating Her Were Pretextual

Having set forth legitimate, non-discriminatory reasons, Plaintiff fails to prove pretext by showing that the proffered reasons were "false *and* that discrimination was the real reason" for the claimed adverse employment actions by proof of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons." Taylor v. Family Residences & Essential Enters, Inc., 2008 U.S. Dist. LEXIS 6915, at *24

(E.D.N.Y. Jan. 30, 2008).  The Court imposes a heightened level of factual specificity to the evidence relied upon by Plaintiff to prove pretext.  Flores v. Buy Buy Baby, Inc., 118 F.Supp.2d 425, 431 (S.D.N.Y. 2000).  A plaintiff's conclusory assumptions do not establish pretext.  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993)

As a first matter, Plaintiff can offer no evidence to show that termination of her employment because of her violation of company policies is not a legitimate, non-discriminatory reason.  Indeed, it is well-settled that "an employer is entitled to discharge an employee who fails to follow company rules and fails to appear for work without notification, even if the absences are attributable to a medical problem." Brown, 488 F.Supp.2d at 406. Where an employee is dismissed in accordance with a leave policy such acts are devoid of pretext.  Id.; Prystajko, 2007 WL 781932 *7; Gratton,  2006 WL 2037912, at *8.

Plaintiff also fails on the critical point of proving that she was treated differently because of her pregnancy, producing no evidence that the Company policies applied to terminate her employment were not applied to non-pregnant employees.  Indeed, she utterly fails to rebut Defendants' evidence that two male employees were terminated for violating the same policies in 2006 and 2007.  (Ex. 1, Pelcman Dec. ¶¶29-32; Ex. 39, 40)  Failing to show that she was treated differently from non-pregnant employees, no inference of discrimination can be drawn. Reilly v. Revlon, Inc., 620 F.Supp.2d 524, 545 (S.D.N.Y. 2009)(This Court noting that absent evidence that pregnant employees were treated differently from non-pregnant employees no inference of pregnancy can be drawn).

Further, the fact that Defendants did not terminate Plaintiff's employment despite her seriously deficient performance in the seven months that passed between them learning of her pregnancy and through the leave period, afforded her opportunities to improve her performance

after learning of her pregnancy, and granted her leave and a week's vacation establishes the absence of a discriminatory animus or a false reason for the termination of her employment and compels the conclusion that no rational finder of fact could infer that Defendants' employment decision was based in whole or in part on discrimination.  Terry v. Ashcroft, 336 F.3d at 137 (2d Cir. 2003).

While Plaintiff may disagree with the assessments of her poor performance, her disagreement fails to prove pretext.  A plaintiff's disagreement with an employer's assessment of her performance is not evidence to prove that discrimination was the real reason for termination of employment.  Riddle v. Liz Claiborne, Inc., No. 00 Civ. 1374 (SAS), 03 Civ. 8798 (SAS), 2006 WL 3057289, at *7 (S.D.N.Y. Oct.27, 2006).   Additionally, courts will not second-guess an employer's decisions concerning personnel, even if foolish, as long as they are not discriminatory.   *See* Seils v. Rochester City Sch. Dist., 192 F.Supp.2d 100, 111 (W.D.N.Y. 2002), *aff'd*, 99 Fed.Appx. 350 (2d Cir. 2004).  Thus, Plaintiff has failed to establish pretext and the pregnancy discrimination claims set forth in the First, Second, and Third Causes of Action should be dismissed.

> E.    Claims of Discrimination Based on Medical Leave or Family Caretaker Status Must be Dismissed Because They Are Not Properly Pleaded

Finally, Plaintiff's claims of discrimination based on medical leave or family caretaker status must be dismissed.   Plaintiff does not plead any action under the Americans with Disabilities Act ("ADA") or Family Medical Leave Act ("FMLA") to sustain a medical leave/disability or family caretaker claim.   Indeed, no FMLA can lie because Plaintiff was employed for less than one year.   Furthermore, Plaintiff presents no evidence of a physical disability which could be pleaded under the ADA.   Finally, there is no protected right under Title VII for parental leave following maternity leave. Courts have consistently rejected arguments

that an employer's denial of leave after maternity leave is gender-based or violative of some right to a family caretaker protection under Title VII.  *See* McNill v. New York City Dept. of Correction, 950 F.Supp. 564, 71 (S.D.N.Y. 1996).

## POINT II

**PLAINTIFF'S RETALIATION CLAIM FAILS BECAUSE THERE IS NO PROTECTED ACTIVTY UPON WHICH TO BASE A RETALIATION CLAIM, NOR DOES SHE SHOW THAT THE PROFFERED LEGITIMATE, NON-DISCRIMINATORY REASONS ARE FALSE**

A.    No Protected Activity Against Which to Retaliate

The same burden-shifting analysis set forth in McDonnell Douglas governs retaliation claims and requires Plaintiff to first establish a *prima facie* case of retaliation by demonstrating that:  (1) [she] was engaged in a protected activity; (2) defendants knew that [she] was engaged in such activity; (3) defendants took an adverse action against [her]; and (4) there was a causal connection between the adverse action and the protected activity, 'i.e. that a retaliatory motive played a part in the adverse employment action.'" Kanhoye v. Altana Inc., No. 05-CV-4308 (ENV)(WDW), 2009 WL 4363445, at *5 (E.D.N.Y. Dec. 3, 2009).

Proof of causation in retaliation cases can be shown either (1) directly, through evidence of retaliatory animus directed against a plaintiff by the defendant, or (2) "indirectly, by showing that the protected activity was followed closely by discriminatory treatment or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993).  "In order for a court to "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case," the temporal proximity must be "very close." Schanfield, No. 07-CV-9716 (CM), 2009 WL 3241573, at *19-20, 34 (S.D.N.Y. Oct. 5, 2009), relying upon Clark County Sch. Dist. v.

14

Breeden, 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (citing cases finding temporal proximity of three months and more to be insufficient to establish causality).

In her Complaint, Plaintiff alleges that, because she complained of pregnancy discrimination, she was not given a promised raise, that she was excluded from one department meeting, and that she was terminated. (Ex. 36, at ¶¶ 24, 30, 36)

These claims establish no causal connection between any protected activity and an adverse employment action.   First, Plaintiff never complained of discrimination based on pregnancy during the period of her employ, but complained only after having been terminated when she filed her charge with the EEOC.   Having never complained of discrimination based on pregnancy, there was no protected activity of a pregnancy discrimination complaint upon which the retaliation claim can be based.   *See* Cruz v. Coach Stores. Inc., 202 F.3d 560, 566 (2d Cir.2000) (A "protected activity' refers to action taken to protest or oppose specifically statutorily prohibited discrimination."); Prystajko, 2007 WL 781932, at *7 (plaintiff failed to demonstrate that she ever complained about any of the alleged conduct on which she attempts to base her claims).

Second, the allegations of a promised raise and being excluded from one department meetings, in addition to not being materially adverse employment actions, fail to establish a causal connection because those events occurred before Plaintiff first complained of pregnancy discrimination to the EEOC.   Grennan v. Nassau County, No. 04-2158 (DRH)(WDW), 2007 WL 952067, at *10 (E.D.N.Y. Mar. 29, 2007).   Third, termination of employment because Plaintiff failed to return to work after leave period ended does not establish a retaliatory motive.   *See* LaCoparra v. Pergament Home Centers, Inc., 982 F.Supp. 213, 223 (S.D.N.Y. 1997)(employer's proffered reason for employee's termination that she had failed to return to work after exhaustion

of the leave period insufficient to establish discrimination).  Fourth, even though Plaintiff might attempt to bootstrap her pregnancy retaliation claim by alleging that an individual defendant used the words- "baby," "honey," "sweetie" "toots", "love," and "bitch"- the period within which the words are alleged to have been uttered pre-date her first complaint of discrimination made to the EEOC and they also do not relate to pregnancy. (Ex. 5, Asberry Dep 232-233; 362-363)  Nor are they statements by a decisionmaker which was related to the decisional process to terminate Plaintiff's employment.  Price Waterhouse, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)('[D]irect evidence' does not include 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself.'").

Additionally, more than six months elapsed between the time Defendants learned of Plaintiff's pregnancy and the termination of her employment, thus defeating any argument of nexus between pregnancy and termination of employment.  See Clark County Sch. Dist., 532 U.S. at 273 (cases citing termination of employment three months after alleged protected activity insufficient to find retaliation).

Failing to produce evidence of a protected activity having taken place before the alleged discriminatory acts and there being no other evidence beyond conclusory allegations and supposition, no causal connection is established to sustain the retaliation claims. See Cobb v. Pozzi, 363 F.3d 89, 108 (2d Cir.2003) (retaliation claim cannot be based on "conclusory assertions of retaliatory motive"; rather, "[plaintiff] must produce 'some tangible proof….'"); Winkfield v. City of New York, No. 97-CV-2183 (HB), 1999 U.S. Dist. LEXIS 19193, at *14 (S.D.N.Y. Dec. 14, 1999) (conclusory allegations and plaintiff's own belief "not enough" to establish causal connection); Holt, 95 F.3d at 130 (plaintiff's personal belief that the

16

nondiscriminatory reason was pretextual not evidence).  Having failed to establish a *prima facie* case for retaliation, the retaliation claims asserted in the First, Second, and Third Causes of Action should be dismissed.

      B.     Plaintiff Fails to Show Legitimate, Non-Discriminatory Reasons are
              <u>False or the Retaliation was the Real Reason for Termination</u>

Even if a *prima facie* case for the retaliation claim is established, the retaliation claim fails because Plaintiff does not produce any evidence to show that the legitimate, non-discriminatory reasons proffered for the termination of her employment were false or show that retaliation was the real reason for the termination.  It is well-established that an employer's decision to terminate employment based on a violation of an equally applied leave policy and an employee's poor work performance are non-pretextual reasons for termination of employment. <u>Brown</u>, 488 F.Supp.2d at 406; <u>Incarnato</u>, 2006 WL 1330103 *5; <u>Prystajko</u>, 2007 WL 781932 *7. Plaintiff also fails to produce any evidence that she was retaliated against because of her pregnancy as compared to non-pregnant employees.  <u>Reilly</u>, 620 F.Supp.2d at 544-45.  Finally, the fact that her employment was not terminated during the time when she was known to be pregnant and her performance seriously deficient, was afforded opportunities to improve performance, and accommodated in taking leave and vacation because of pregnancy establishes the lack of any discriminatory animus or a false reason for termination of her employment.  Thus, no rational finder of fact could infer that Defendants' employment decision was based in whole or in part on discrimination and the retaliation claims should be dismissed.  <u>Terry</u>,  336 F.3d at 137.

**POINT III**

**PLAINTIFF'S HOSTILE WORK ENVIRONMENT
CLAIM SHOULD BE DISMISSED BECAUSE IT FAILS TO MEET LEGAL
STANDARDS TO AVOID SUMMARY JUDGMENT**

A.    Hostile Work Environment Claim Should Be Dismissed Because
      Not Pleaded as a Cause of Action in the Complaint and is Redundant

In her Complaint, Plaintiff does not plead a hostile work environment claim in either the

First, Second, or Third Causes of Action or as a separate cause of action. (Ex. 36, at ¶¶54, 61,

69-70).

Plaintiff's failure to specifically plead a cause of action for hostile work environment bars

its consideration as a claim.   Hostile work environment claims not specifically pleaded as a

separate cause of action are subject to dismissal.   Kear v. Katonah Lewisboro Central School

Dist., No. 05 Civ.703., 2007 WL 431883, at *3 (S.D.N.Y. Feb. 7, 2007).   Even if a hostile work

environment claim is sufficiently pleaded, the claim must be dismissed as redundant where a

plaintiff seeks to assert a hostile work environment claim in iteration of another already pleaded

discrimination claim. Id.

This rule applies here where the alleged comments "you're not going to get that raise

now that you're pregnant," "there's nothing like a pregnant woman to look at," "I know, I get to

look at that all day long," and "[t]his Company has been burnt [sic] too many times by pregnant

women" is not evidence of a separate claim for hostile work environment, but evidence which

Plaintiff offers to buttress her pregnancy discrimination claim.    Thus, any hostile work

environment claim should be dismissed.

B.    Alleged Comments Fail to Meet Standards for Hostile Work Environment

Even if a separate hostile work environment claim is sufficiently pleaded, the claim fails

under the McDonnell Douglas framework. To establish a *prima facie* case of hostile work

environment, Plaintiff must demonstrate both that she subjectively perceived her work

environment to be hostile *and* that, from an objective standpoint, the work environment was

18

"permeated with discriminatory intimidation, ridicule, and insult [that was] sufficiently severe or pervasive to alter the conditions" of that environment. <u>Hayut v. State University of New York</u>, 352 F.3d 733, 745 (2d Cir. 2003). Courts must "examine the totality of the circumstances, which may include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" <u>Allen v. Advanced Digital Information Corp.</u>, 500 F. Supp.2d 93, 105 (N.D.N.Y. 2007). Episodic or isolated incidents of discrimination, including random offensive or inappropriate comments and simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious), are not sufficient to establish an objectively hostile and abusive work environment. <u>Petrosino v. Bell Atlantic</u>, 385 F.3d 210, 223 (2d Cir. 2004).

The three alleged remarks attributed by Plaintiff to Lababedi and Schneiderman (Comp. at ¶ 24, 27, 28), even if taken as having been made, are insufficient to establish a hostile work environment claim based on pregnancy because they do not establish that the workplace was "permeated … with discriminatory intimidation, ridicule, and insult" or establish that the remarks were "sufficiently severe or pervasive to alter the conditions" of Plaintiff's employment. Indeed, the frequency and degree of harassment for a hostile work environment claim requires substantially more than the conduct alleged here. *See, e.g.,* <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 768 (2d Cir. 1998) (hostile work environment claim dismissed where plaintiff claimed that she "had been voted 'sleekest ass' in the office" and that defendant "deliberately touched [plaintiff's] breasts….); <u>Doolittle v. Russo</u>, No. 88-CV-1175, 1996 WL 159850, at *16 (N.D.N.Y. Mar. 28, 1996)(plaintiff's claims insufficient where she alleged sheriff made passes at her, commented on her body, tried to kiss her, and cornered her on more than 20 occasions);

Johnson v. Tower Air, Inc., 149 F.R.D. 461, 470 (E.D.N.Y. 1993) (supervisor casually touching Plaintiff's body over 1 1/2 years, in addition to placing his hand on plaintiff's thigh, insufficient to establish hostile work environment claim); Trotta v. Mobil Oil Corp., 788 F. Supp. 1336, 1342, 1350 (S.D.N.Y. 1992) (hiring strippers and showing pornographic slides at company-sponsored functions and other sexual comments made over extended period of time insufficient to establish a *prima facie* case of hostile environment).   For these reasons, even if a hostile work environment claim is determined to have been properly pleaded, the claims should be dismissed.

POINT IV

**INDIVIDUAL LIABILITY CLAIMS SHOULD BE DISMISSED
BECAUSE NONE OF INDIVIDUAL DEFENDANTS WERE EMPLOYERS AND
DID NOT PARTICIPATE OR ENGAGE IN THE ALLEGED DISCRIMINATORY ACTS**

A.     No Individual Liability under NYSHRL

The NYSHRL provides for a claim of individual liability where the individual is the "employer" or "aids and abets the employer's discrimination."  *See* N.Y. McKinney's Executive Law § 296(1)(6).   Under the NYSHRL, individual liability attaches only if an individual defendant has an "ownership interest" in the corporate employer or had the "power to do more than carry out personnel decisions made by others." Patrowich v. Chemical Bank, 483 N.Y.S.2d 659, 660 (1984).  None of the individual Defendants have or had an "ownership interest" in the corporate employer or the "power to do more than carry out personnel decisions made by others."  Therefore, no individual liability theory under NYSHRL can be sustained.

Likewise, the individual liability sought to be applied through an aiding and abetting theory under NYSHRL fails.   Under an aiding and abetting theory, Plaintiff must prove that the individual Defendant "actually participates in the conduct giving rise to" the claim.  Feingold v. State of New York, 366 F.3d 138, 158 (2d Cir. 2004).   Here Plaintiff claims she suffered

discrimination by not being given a raise, being excluded from a department meeting, and having her employment terminated.   No individual liability under the NYSHRL can be sustained because 1) not being given a raise because of poor performance or employee ineligibility, or being excluded from a meeting, do not constitute an adverse employment actions in the absence of evidence of disparate treatment and 2) none of the individual Defendants by themselves had any power or authority to make the decision to terminate Plaintiff's employment.

Because it is uncontested by Plaintiff that she did report to work for three consecutive work days, the application of the Company policies to terminate her employment was not a discriminatory act in which any of the individual defendant "participated" and the claim for individual liability under NYSHRL must be dismissed.

B.     No Individual Liability under NYCHRL

Under the NYCHRL, it is unlawful for an employer, employee, or agent to discharge or discriminate against a person on the basis of gender or to aid, abet, incite, compel, or coerce an act of discrimination or attempted discrimination.   N.Y.C. Admin. Code § 8-107(1)(a) and (6). A prerequisite for holding a defendant liable under these provisions is that the defendant at issue must have actually engaged in a discriminatory act.   Smith v. AVSC Intern., Inc., 148 F.Supp.2d 302, 308 (S.D.N.Y. 2001).

For the reasons set forth above, none of the alleged discriminatory acts (not giving a raise because of poor performance or employee ineligibility and being excluded from a meeting were anything unlawful.   Furthermore, none of the individual Defendants could decide to give Plaintiff a raise or singularly had the authority on their own to terminate her employment.   (Ex. 1, Pelcman Dec ¶54)  Because it is uncontested by Plaintiff that she did not report to work for three consecutive work days, the application of the Company policies was not a discriminatory act in

21

which any of the individual defendant "participated."   Thus, the claims brought against the individual Defendants under the NYCHRL must be dismissed.

## POINT V

### PLAINTIFF IS BARRED FROM RECOVERYING BACK OR FRONT PAY DAMAGES BECAUSE OF THE AFTER-ACQUIRED EVIDENCE RULE

The after-acquired evidence rule applies to bar recovery of front and back pay damages where it is discovered that the employee would have been terminated for other lawful reasons. Greene v. Coach, Inc., 218 F. Supp.2d 404, 412 (S.D.N.Y.2002). With respect to back pay, claims may "be limited to salary lost from the date of the unlawful discharge until the date the employer discovered the information which would have led to discharge on lawful grounds." Flores, 118 F. Supp.2d at 432-33.

Here Plaintiff, in violation of the confidentiality agreement executed by her on October 3, 2006, admits to having sent Company advertising pricing rates, the markets in which advertising time was sold, stations from which the Company bought advertising time, the length and types of programming being provided to clients, buy-detail reports reflecting orders booked by clients of the Company, and quarterly company sales reports to an unauthorized third party in March 2007. The disclosed information was shielded from public knowledge because it formed the basis of the Company's competitiveness in the marketplace.   Armed with this information, the Company's competitors had the ability to approach clients, underbid Company pricing, and copy Company programming, while other buyers of advertising time had the ability to negotiate more favorable rates.  The severity of the breach is underscored by the fact that Plaintiff disclosed the information to an individual, Lynn Olson, who was employed by Marriott, a Fortune 200 company and a buyer of significant advertising time.  (Ex. 1, Pelcman Dec ¶¶35-39)  Olson does not deny that she and Plaintiff exchanged several e-mails between containing the confidential

information on March 22, 2007, June 21, 2007, and December 9, 2007.  (Ex. 16-5, Olson Dep

141-145)

For this violation, Plaintiff's employment would have been immediately terminated by

the Company. (Ex. 1, Pelcman Dec ¶43)  Termination for that reason would have been legitimate

and nondiscriminatory.  *See* Shider v. Comm'n Workers of Am.*,* 2004 U.S. Dist. LEXIS 5068, at

*16-17 (S.D.N.Y. Mar. 26, 2004) (disclosure of confidential client information constituted a

legitimate, non-discriminatory reason for terminating employee); *see* Jordan v. Olsten Health

Svcs.*,* 111 F.Supp.2d 227, 233-34 (W.D.N.Y.2000).  Thus, all front pay damages should be

barred and any recovery for back pay should be barred from the date of discharge June 14, 2007

until the date of the production of the e-mails evidencing the breach in or around June 8, 2009,

but in any event no later than October 20, 2009, when Pelcman first discovered breach.  Greene,

218 F. Supp.2d at 412.

## POINT VI

### NO PUNITIVE DAMAGES MAY BE AWARDED BECAUSE DEFENDANTS IN GOOD FAITH RELIED UPON THE ADVICE OF COUNSEL

Under federal law, the advice of counsel defense acts to bar punitive damages.  To

establish the advice of counsel defense, a defendant "has to show that he made complete

disclosure to counsel, sought advice as to the legality of his conduct, received advice that his

conduct was legal, and relied on that advice in good faith."  Markowski v. SEC, 34 F.3d 99, 105

(2d Cir.1994).

From January through March 2007, Defendants sought the advice of counsel concerning

Plaintiff's serious deficiencies at work, her insubordination, absenteeism, tardiness, excessive

personal communications, and other matters concerning Plaintiff's performance. The advice was

sought from Norman Jenkins, Esq., a partner at the law firm of Troutman Sanders, LLP, because

Pelcman did not know how to proceed in light of Plaintiff's pregnancy but wanted to do the right thing because she had never been in a situation like this before.  (Ex. 2-9, Pelcman Dep 64-65, 67-68)

During a telephone call which took place in early to mid-January 2007, Pelcman provided Jenkins with the history of the situation, Plaintiff's on-going performance issues, the fact that Plaintiff was pregnant, and told Jenkins that she wanted the Company to do the right thing going forward.  Because of continuing difficulties with Plaintiff's work performance, Pelcman called Jenkins again on January 24, 2007, for advice, which after reviewing Plaintiff's continuing work deficiencies, Jenkins advised Pelcman that the Company had sufficient bases to terminate Plaintiff's employment, but instead suggested the Company consider placing her on probation to avoid the risk of potential litigation.  Relying upon the advice, Plaintiff was placed on probation on January 24, 2007.  (Ex. 2-10, Pelcman Dep 73-75; 77-79; Ex. 2-11, Pelcman Dep 87; Ex. 10-3, Jenkins Dep 70-77)

In February and March 2007, Jenkins provided further legal advice to the Company concerning Plaintiff's work deficiencies and her claim of a hostile work environment which arose after it was discovered that Plaintiff had lied about completing work assignments.  Jenkins counseled the Company on its internal investigation of the hostile work environment complaint, dictated to Pelcman a company response to the complaint, and when Plaintiff's work performance did not improve after being placed on probation, Jenkins provided additional advice to the Company concerning how it should attempt to address Plaintiff's work deficiencies.  (Ex. 2-18, Pelcman Dep 112-113, 121-122; Ex. 4-10, Lababedi Dep 90-96; Ex. 10-5, Jenkins Dep 52-55)

Pelcman contacted Jenkins on June 14, 2007, after Plaintiff had not returned to work for three consecutive days.  She informed Jenkins of the relevant Company policies and practices and of the Company's consistent application of the "Three Day Policy" to terminate others who had violated the Policy.  Jenkins advised that the Company had cause to terminate Plaintiff's employment and further counseled the Company that if the policy was not enforced against Plaintiff, it risked the policy being later found to be invalid for failing to consistently and uniformly apply the policy.  Jenkins then dictated a letter for the Company to place on its letterhead advising Plaintiff that her employment had been terminated.  (Ex. 2-34, Pelcman Dep 222-225; 229-236; Ex. 2-36, Pelcman Dep 224-225, 229-234; *see also* Ex. 30) Thus, Defendants having "made complete disclosure to counsel, sought advice as to the legality of [its] conduct, received advice that his conduct was legal, and relied on that advice in good faith," the defense bars recovery of punitive damages.  Markowski, 34 F.3d at 105.

## CONCLUSION

Wherefore, for the above reasons, Defendants respectfully request that this Court grant summary judgment in their favor and dismiss with prejudice the First, Second, and Third Causes of Action set forth in the Complaint.

Dated: New York, New York
            January 29, 2010

Respectfully submitted,

THE WATANABE LAW FIRM, LLC

By:     */s/ William Keith Watanabe*
            William Keith Watanabe (WW 4532)
            444 Madison Avenue, 17th Floor
            New York, New York 10022
            Phone: (212) 486-7005
            Fax:    (212) 486-6010
            Email:  wkwatanabe@watanabe-law.com